**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| |
|---|
| LEONARDO CASTRO MENDOZA, |
| Petitioner, |
| v. |
| DAVID WESLING, *et al.*, |
| Respondents. |

Civil Action No. 1:26-cv-11974-ADB

**RESPONDENTS' SUR-REPLY**

Respondents, by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submit this sur-reply, pursuant to this Court's Order at ECF No. 11. Respondents first provide a status update of the result of the Third Country Screening Interview conducted by the United States Citizenship and Immigration Service ("USCIS"). *See id*. On May 22, 2026, USCIS determined that Petitioner did not establish that it was more likely than not that he will be persecuted or tortured in Mexico. *See* ECF No. 12-5.

**ARGUMENT**

A. **Zadvydas Remains Applicable.**

Respondents acknowledge decisions from other sessions of this Court, such as *Nguyen*, which have found that *Zadvydas v. Davis*, 533 U.S. 678 (2001), does not apply when an alien claims ICE violated the regulations when revoking their Order of Supervision ("OSUP"). *See e.g., Nguyen v. Hyde,* 788 F.Supp. 3d 144, 149 (D. Mass. 2025). However, it is worth noting that when this Court reviewed the applicable regulations it did not explicitly reach the same conclusion as Judge Joun, in *Nguyen*, but rather did not address the interplay between those regulations and

*Zadvydas. See Van Tran v. Hyde*, No. 25-CV-12546-ADB, 2025 WL 3724853, at \*2 (D. Mass. Dec. 24, 2025).[1] Respondents maintain that Judges O'Toole and Stearns correctly incorporated the significant likelihood of removal standard in their decisions to conclude removal was likely, if not, imminent. *See Quichimbo Sumba, et. al v. Noem*, No. 1:25-cv-13625-GAO, ECF No. 16 (D. Mass. Feb. 9, 2026); *Pen v. Wesling*, 1:26-cv-10510-RGS, ECF No. 18 (D. Mass. March 10, 2026). Additionally, another session of this Court denied a similar petition where ICE demonstrated it was ready to effectuate removal. *See Phommachak v. ICE*, 1:25-cv-13894-BEM, ECF No. 16-17 (D. Mas. Jan 26, 2026); *see also Jalal v. Noem*, No. 5:26-CV-00510-CAS-SP, 2026 WL 413588, at \*4 (C.D. Cal. Feb. 10, 2026), *reconsideration denied*, No. 5:26-CV-00510-CAS-SP, 2026 WL 478344 (C.D. Cal. Feb. 19, 2026) (utilizing the *Zadvydas* standard). Similarly, because Petitioner did not pass the Third Country Screening Interview conducted by USCIS and an IJ has not granted his motion to reopen, ICE has been and continues to be ready to effectuate Petitioner's removal. *See* ECF No. 12-5; ECF No. 9-1, ¶ 18; *see also* 8 C.F.R. § 241.4(b)(3) (An alien who has filed a motion to reopen shall remain subject to the provisions of this section unless the motion to reopen is granted.").

Next, Petitioner incorrectly states the initial burden under *Zadvydas*, which is for the alien to show that there is good reason to believe that removal will not occur in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 680. Even if he persuades this Court that a challenge

---

[1] It should not be lost on this Court that the regulations at 8 C.F.R. §§ 241.4 and 241.13 were amended shortly after the Supreme Court's decision in Zadvydas, supporting Respondents contention that *Nguyen*, 788 F.Supp. 3d at 149, and similar cases have incorrectly interpreted the regulations. *See Continued Detention of Aliens Subject to Final Orders of Removal*, 66 FR 56967-01, at \*56968-69 (Nov. 14, 2001).

may be brought before his detention reaches six months, the burden befalls to him that there is not a significant likelihood of removal to Mexico in the reasonably foreseeable future. *Id.* Nowhere in ICE's declaration describing how it would remove Petitioner to Mexico, presuming the stay is lifted, does it state that the Instituto Nacional de Migracion ("INM") requires a travel document for Petitioner to be removed there. *See* ECF No. 9-1. Nor has Petitioner submitted any objective evidence that a travel document is required or that the INM does not accept Guatemalan aliens, such as Petitioner. *See* ECF No. 1, 12; *see also Zadvydas,* 533 U.S. at 700 (Explaining that judicial "review must take appropriate account of the greater-expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive ... efforts to enforce this complex [area law of law], and the Nation's need to speak with one voice in immigration matters").

Petitioner raises a decision from another session of this Court which stayed removal until the First Circuit issues mandate in *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 26-1212 (1st Cir.). Respondents respectfully aver that the stay of removal in *Navarro v. Lyons* was improvidently issued as it similarly shifted the burden onto the Respondents where Petitioner acknowledged that ICE has successfully removed non-Mexican aliens to Mexico and that the court lacked jurisdiction to stay removal in the first instance. *See* 1:26-cv-10876-WGY, ECF No 23, 17-3. Petitioner also fails to acknowledge that two other sessions of this Court denied petitions by aliens who brought third country removal challenges via habeas petitions. *See e.g.*, *Landin Hernandez v. Moniz,* No: 25-CV-12889-LTS, ECF No. 12 at *2 (D. Mass. Oct. 23, 2025); *Arsene v. Moniz*, 1:25-cv-13757-PBS, ECF No. 14 (D. Mass. Jan. 9, 2026); *but see Siguenza v. Moniz*, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025).

Finally, ICE agency counsel relayed that the agency intends to oppose Petitioner's motion to reopen. Presumably in any opposition, the agency may rely on the USCIS determination that an asylum officer has already found that it is not more likely than not Petitioner will be persecuted or tortured in Mexico. If Petitioner cannot make out a prima facie case for eligibility for relief, Board of Immigration Appeals precedent calls the Immigration Judge to deny the motion to reopen. *See generally, Matter of L-O-G-*, 21 I&N Dec. 413 (BIA 1996) (citing to *INS v. Abudu*, 485 U.S. 94 (1988)). As such, Respondents maintain that Petitioner has not shown good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *See* 8 C.F.R. § 241.4(b)(3) (An alien who has filed a motion to reopen shall remain subject to the provisions of this section unless the motion to reopen is granted.").

B. **ICE properly revoked the OSUP under Section 241.4.**

Petitioner makes a point that ICE's release dictates whether section 241.4 or 241.13 governs the revocation of Petitioner's OSUP. *See* ECF No. 12 at 12 citing to 8 C.F.R. §§ 241.4(l)(2), 241.13(i)(1), (2). Notably, Petitioner has not provided any objective evidence that demonstrates that ICE released him because he could not be removed in the reasonably foreseeable future. Rather, he relies on circumstantial evidence from the Supreme Court's decision in *Johnson v. Guzman Chavez*, 594 U.S. 523, 537 (2021). To the contrary, the evidence Petitioner submitted shows that he was granted withholding of removal on December 17, 2014, and released from custody on or about December 30, 2014—just two weeks later. *See* ECF No. 7-1, 7-2. Significantly, the release took place during the time either party could appeal and before it was administratively final. *See* ECF No. 7-1, *see also* 8 C.F.R. § 1231(a)(1)(B)(i). Per 8 C.F.R. § 241.13(a), that section applies to aliens who are subject to a final order of removal and are detained under the custody review procedures provided at 8 C.F.R. § 241.4 ***after*** the expiration of the

4

removal period. 8 C.F.R. § 241.13(a) (emphasis added). As the removal period in Petitioner's case could not have started, as he was released before he was subject to an administratively final order of removal, his release could not have been under 8 C.F.R. § 241.13.

ICE continues to aver that it followed the procedures required by 8 C.F.R. § 241.4(l)(1). Petitioner's OSUP clearly and simply states that he cannot commit any crimes while released, a fact he cannot contest. ECF No. 1-4 at 2. The plain language of 8 C.F.R. § 241.4(l)(1) does not require a determination by the agency prior to detention, and it is therefore unlike this Court's interpretation of the language in 8 C.F.R. § 241.13(i)(2). The regulation also does not require a conviction, but rather, a violation of a condition of release. Theoretically, ICE could have revoked Petitioner's OSUP for failure to apply for travel documents. *See e.g.*, *Sayanath v. Noem*, No. 5:25-CV-02955-JLS-MAR, 2025 WL 3303967, at *3 (C.D. Cal. Nov. 24, 2025) (denying a petition where ICE revoked the OSUP 8 C.F.R. § 241.13(i)(1) for violation of the conditions of release—the alien had not made any attempt to obtain a travel document). Likewise, the regulation does not mandate that as soon as ICE becomes aware of a violation of a condition of release, it must detain an alien. *See* 8 C.F.R. § 241.13(i)(1) ("Any alien who has been released under an order of supervision under this section who violates any of the conditions of release ***may*** be returned to custody . . ."). This Court should not read more into the regulation than Congress intended upon drafting. *See generally, Lopez-Soto v. Hawayek*, 175 F.3d 170, 172 (1st Cir. 1999) ("We start our search for the meaning of the words that Congress wrote with an appraisal of the statutory text and structure, mindful that if the plain language of the statute points unerringly in a single direction, an inquiring court ordinarily should look no further.") (internal citation omitted).

By way of example, other district courts around the country when examining 8 C.F.R. § 241.13(i)(1) have denied habeas petitions claiming a violation of the OSUP revocation regulations

where Petitioner violated either the condition prohibiting the commission of crimes or another condition of release, ICE served the revocation notice, and ICE conducted an informal interview. *See e.g., Faisal Y. v. Mullin*, No. 26-CV-2521 (LMP/ECW), 2026 WL 1557136, at *3 (D. Minn. June 2, 2026) (concluding ICE complied with the regulations where the alien had a pending charge of domestic assault, the revocation identified this arrest, and ICE promptly conducted the informal interview); *Pimentel Traviejo v. Mordant*, No. 2:26-CV-01489-SPC-NPM, 2026 WL 1408500, at *1 (M.D. Fla. May 20, 2026) (Concluding that as the alien allegedly violated a condition of his release by committing trespass, he "may be continued in detention for an additional six months in order to effect [his] removal, if possible, and to effect the conditions under which [he] had been released,: and after six months may seek review of his detention.); *Walter v. Marin*, No. ED CV 26-1108-JFW(PVC), 2026 WL 822533, at *3 (C.D. Cal. Mar. 20, 2026) ("[B]ecause Petitioner has violated the conditions of release, 'he may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.'").

Nor does the regulation state that the informal interview must be conducted in the presence of an attorney and in the alien's best language. *See* 8 C.F.R. §§ 241.4(l), 241.13(i)(3). Petitioner admits that he does speak and understand Spanish, albeit identifying it as his second language. *See* ECF No. 12-1, ¶ 6. He also understood enough Spanish to inform the ICE officer that he did not want to speak further without his attorney being present. *See* ECF No. 9-2. Furthermore, Respondents submit a duplicate copy of Petitioner's March 2025 Form I-765, Application for Employment Authorization, attesting that the interpreter read every question and answer to him in

6

Spanish before he signed.[2] Exhibit 1. As Petitioner has admitted he speaks Spanish and has submitted an application to USCIS with the assistance of a Spanish interpreter, Petitioner's purported language barrier would not have diminished his opportunity to respond during the informal interview. Other courts have declined the expansive reading of the OSUP revocation regulations that Petitioner asks for. *See Doe*, 2018 WL 4696748, at *7 ("There is no requirement that ICE give any advance notice of the informal interview either to petitioner or her counsel."); *Reyes v. King,* No. 19-cv-8674, 2021 WL 3727614, at *10 (S.D.N.Y. Aug. 20, 2021) (holding that "the Due Process Clause of the Fifth Amendment does not entitle" petitioner to a pre-detention "hearing at [a] specified time"); *Moran v. U.S. Dep't of Homeland Sec.*, No. 20-cv-00696, 2020 WL 6083445, at *9 (C.D. Cal. Aug. 21, 2020) (expressing skepticism about "the source of any due process right to advance notice of revocation of supervised release or other removal-related detention").

Therefore, Respondents maintain that ICE properly revoked Petitioner's OSUP.

**C.  *De Novo* Review of USCIS' Third Country Screening Determination is Not Proper.**

To the extent that Petitioner argue that this Court should order an Immigration Judge to review of the negative third country screening interview, the argument fails because habeas jurisdiction only extends to the review the legal propriety of Petitioner's *current detention. See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 104, 116–20 (2020) ("Respondent does not seek release from custody, but an additional opportunity to obtain asylum. His claims therefore fall outside the scope of the writ [of habeas corpus] as it existed when the Constitution was

---

[2] The Form I-765 was submitted by the same attorney, John Wilshire, who attested that Petitioner's motion to reopen was filed with the assistance of a K'iche interpreter. See ECF No. 12-2.

adopted."). "[H]abeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("in each case [a petitioner's] grievance is that he is being unlawfully subjected to physical restraint, and in each case habeas corpus has been accepted as the specific instrument to obtain release from such confinement.") (emphasis added) (footnote omitted).

The Supreme Court has clarified that the scope of habeas cannot be extended to claims that are ultimately seeking "the opportunity to remain lawfully in the United States." *Thuraissigiam*, 591 U.S. at 119-20. In *Thuraissigiam*, the Supreme Court surveyed various sources, from Blackstone's Commentaries of 1768 to contemporaneous jurisprudence, and determined that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Id.* (citing *Preiser*, 411 U.S. at 484; *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005); *Munaf v. Geren*, 553 U.S. 674, 693 (2008)). In *Thuraissigiam*, the alien was seeking almost identical relief to that sought by Petitioner here, albeit not in the context of an expedited removal order, but as to third-country screening determination may seek an order directing an IJ to review the DHS's order of removal. *Id.* at 116-20. Also, much like in this case – where IJ review will not necessarily result in Petitioner's release – the Court noted that Thuraissigiam "would remain subject to arrest, detention, and removal" even if IJ review were ordered. *Id.* These conditions, the Supreme Court opined, left Thuraissigiam's request for relief outside of the scope of a writ of habeas corpus. *Id.*[3] As such the Court should not be inclined to follow any argument raised by Petitioner to this effect.

---

[3] Nor is any attempted distinction between the expedited removal process and the third country screening process. The Supreme Court did not narrow the scope of its *Thuraissigiam* decision to

Based on Respondents prior response and the foregoing, Respondents respectfully request that this Court deny the Petition and lift the stay of removal for ICE to effectuate Petitioner's removal to a third country, Mexico.

Dated: June 8, 2026                                Respectfully submitted,

                                                   LEAH B. FOLEY
                                                   United States Attorney

                                       By:    */s/ Erica McMahon*
                                              Special Assistant United States Attorney
                                              United States Attorney's Office
                                              1 Courthouse Way, Suite 9200
                                              Boston, MA 02210
                                              Tel.: 617-748-3271
                                              Email: Erica.McMahon@usdoj.gov

## **CERTIFICATE OF SERVICE**

I, Erica McMahon, Special Assistant United States Attorney, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Paper copies will be sent to those indicated as non-registered participants.

Dated: June 8, 2026                    By:    */s/ Erica McMahon*
                                              Special Assistant United States Attorney

---

expedited removal; rather, it clarified that the scope of habeas review simply does not extend to claims seeking collateral review without an accompanying attack on the legality or conditions of the detention itself. *Thuraissigiam*, 591 U.S. at 116-20 (explaining the scope and limitations of the Suspension Clause and a writ of habeas corpus).

9